ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

Among others, 10/25 kg drums, more or less, of an article of drug for veterinary use, labeled in part:

(drum)

"*** SULFADIAZINE SODIUM USP XXIII *** NET WT. 25 KG *** MADE IN CHINA *** SULFADIAZINE SODIUM LONGWIND LOT # *** VET RX LOT # *** ACCEPTED ***"

and all other articles of drug for veterinary use, including all active drug components in bulk containers, in-process materials, and finished products, in any dosage form, combination, strength lot number, type or size container, labeled or unlabeled, which articles were manufactured, or are used in the manufacture of finished dosage form drugs, by Veterinary Pharmacy Corporation, doing business as Vet Rx Pharmacy, 201 South Third Street, St. Peter, Minnesota, and which are determined to consist in whole or in part of components that originated outside the State of Minnesota,

Defendants-in-rem,

and

VETERINARY PHARMACY CORP., dba VET RX PHARMACY, a corporation, and WILLIAM A. SODERLUND, JR., and MICHAEL STROBEL, individuals,

Defendants.

Civil No. 00-CV-2725(DSD/JMM)

Consent Decree of Condemnation and Permanent Injunction

**INTRODUCTION**

WHEREAS, on December 18, 2000, plaintiff United States of America ("Plaintiff"), on behalf of the United States Food and Drug Administration ("FDA" or the "Agency"), filed a verified complaint for forfeiture in this Court against the above-captioned articles of drug, which alleges that the above-captioned drugs, while held for sale after shipment of one or more of their

FILED 2-28-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD 2-28-02
DEPUTY CLERK

components in interstate commerce, are adulterated and misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act (the "FD&C Act"), as follows:

21 U.S.C. § 351(a)(2)(B) (in-process materials and finished drug products manufactured by Vet Rx Pharmacy) in that the methods used in, and the facilities and controls used for, their manufacture, processing, packing, and holding do not conform to and are not operated and administered in conformity with current good manufacturing practice to assure that such drugs meet the safety requirements of the FD&C Act and have the identity and strength, and meet the quality and purity characteristics, which they purport and are represented to possess; and

21 U.S.C. § 351(a)(5) in that they (articles of drug manufactured by Vet Rx Pharmacy) are new animal drugs within the meaning of 21 U.S.C. § 321(v)(1) because they are not generally recognized by qualified experts as safe and effective for their intended uses, and they have not been approved pursuant to 21 U.S.C. § 360b; and

21 U.S.C. § 352(f)(1) in that they (active drug components and in-process materials) fail to bear adequate directions for use and they are not exempt from this requirement under 21 C.F.R. § 201.122 because they are used to make unapproved new animal drugs; and

WHEREAS, the United States Marshal for this District seized the above-captioned articles pursuant to a warrant of arrest in rem and notice issued by this Court; and

WHEREAS, on January 9, 2001, Veterinary Pharmacy Corp. dba Vet Rx Pharmacy ("VPC") intervened and filed a statement of interest or right to the seized articles and thereafter filed an answer; and

WHEREAS, certain seized articles have been released to VPC pursuant to an Order of this Court dated October 19, 2001 (hereafter, the articles other than those that have been released pursuant to the October 19, 2001 Order are collectively, the "Seized Articles"); and

WHEREAS, VPC affirms that it is the sole owner of all of the articles that were seized and that no other person has an interest in said articles and VPC further affirms that it will hold Plaintiff harmless should any party or parties hereafter file or seek to file a statement of interest

or right to intervene in this action, or seek to defend or to obtain any part of the articles that were seized; and

WHEREAS, on August 1, 2001, this Court granted Plaintiff's motion for leave to amend the complaint to seek injunctive relief and to join VPC, a corporation, and William A. Soderlund, Jr., and Michael Strobel, individuals, as Defendants (hereafter, collectively "Defendants"); and

WHEREAS, Defendants have represented to Plaintiff and this Court that VPC is engaged in compounding, manufacturing, processing, packing, holding, labeling, and distributing products solely for use in food-producing animals; and

WHEREAS, Defendants having appeared and having consented to entry of this Decree without contest, without admitting or denying the allegations of the amended complaint, and before any evidence and/or testimony has been offered or introduced; and

WHEREAS, the United States of America having consented to this Decree, and the Court having been fully advised of the basis thereof, on the motion of the parties hereto,

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that:

1. This Court has jurisdiction over the subject matter and over all parties to this action and venue is proper in this District.

2. The amended complaint for forfeiture and injunction states a claim for relief against Defendants under the FD&C Act.

**IN REM PROVISIONS**

3. The Seized Articles are veterinary drugs that are adulterated while held for sale after shipment of one or more of their components in interstate commerce within the meaning of the FD&C Act, 21 U.S.C. § 351(a)(2)(B) and (a)(5), and are misbranded while held for sale after shipment of one or more of their components in interstate commerce within the meaning of the FD&C Act, 21 U.S.C. § 352(f)(1), as alleged in the amended complaint.

4. The Seized Articles are therefore condemned pursuant to 21 U.S.C. § 334(a) and forfeited to the United States.

5. The United States shall recover from VPC all court costs, fees, and storage expenses, and such further costs for which VPC is liable pursuant to 21 U.S.C. § 334(e) with respect to the Seized Articles. Within ten (10) days after entry of the Decree, FDA will send VPC an invoice for the costs, fees, and expenses due under the preceding sentence as of that date. VPC shall pay the costs, fees, and expenses within ten (10) days of receiving the invoice from FDA.

6. Pursuant to 21 U.S.C. § 334(d)(1), within twenty (20) days of the entry of this Decree, VPC shall execute and file with the Clerk of this Court a good and sufficient penal bond with surety in the amount of three hundred thousand dollars ($300,000.00), or shall deposit three hundred thousand dollars ($300,000.00) into the registry of this Court, if this Court issues an order permitting VPC to do so. The bond shall be in a form acceptable to the Clerk of this Court and payable to the United States of America, and conditioned on VPC's abiding by and performing all of the terms and conditions of this Decree and of such further orders and decrees as may be entered in this proceeding relating to the Seized Articles. If funds are deposited into the registry of this Court, the funds shall be deposited in accordance with Rule 67 of the Federal Rules of Civil Procedure and applicable statutes and local rules. Release of the funds to VPC shall occur upon Court order following VPC's abiding by and performing the terms and conditions of this Decree and of such further orders and decrees as may be entered in this proceeding relating to the Seized Articles.

7. Within thirty (30) days of the entry of this Decree, and after filing the bond with this Court or depositing funds as provided in paragraph 6 of this Decree, VPC shall give written notice to FDA that VPC, at its own expense, is prepared to destroy the Seized Articles, pursuant to 21 U.S.C. § 334, under the supervision of FDA. VPC shall not dispose of the Seized Articles or any part of them in a manner contrary to the provisions of the FD&C Act, or any other federal law (including but not limited to the National Environmental Policy Act of 1969), or of the laws of any state or Territory (as defined in the FD&C Act) in which they are disposed. VPC shall destroy the Seized Articles under the supervision of FDA and shall pay to the United States all

costs incurred in supervising the destruction of the Seized Articles, at the rates specified in paragraph 19 of this Decree.

8. Following the payment of costs pursuant to paragraph 5 and the posting of the bond or depositing of funds by VPC as required by paragraph 6 of this Decree, and following FDA's receipt of VPC's written notice as described in paragraph 7 of this Decree, the United States Marshal for this District shall release the Seized Articles from his custody to the custody of VPC for the sole purpose of destroying the articles pursuant to the requirements of paragraph 7.

9. VPC shall at all times, until the Seized Articles have been destroyed, retain said articles intact for examination or inspection by FDA, in a place made known to and approved by the Agency, and shall retain the records or other proof necessary to establish the identity of such articles.

10. Within sixty (60) days of the filing of the bond with this Court or depositing funds with this Court as provided in paragraph 6 of this Decree, VPC shall complete the destruction of the Seized Articles under the supervision of FDA. Within ten (10) days of VPC's completion of the destruction of the Seized Articles, FDA will send VPC an invoice for the costs of supervising such destruction, as set forth in paragraph 7, and VPC shall pay those costs within ten (10) days of receiving FDA's invoice. Within ten (10) days of receipt of such payment from VPC, FDA will notify the United States Attorney for this District that VPC has completed the destruction of the Seized Articles and that VPC has paid the costs set forth in FDA's invoice.

11. The United States Attorney for this District, upon being advised by FDA that the foregoing conditions of this Decree have been performed, shall transmit such information to the Clerk of this Court, whereupon the bond given in this proceeding shall be canceled and discharged, or the funds deposited as described in paragraph 6 of this Decree shall be returned to VPC, upon Court Order.

12. If VPC fails to abide by and perform all the terms and conditions of this Decree, or of the bond, or of such further order or decree as may be entered in this proceeding regarding

the Seized Articles, then the bond or the funds deposited as provided in paragraph 6 of this Decree shall, on motion of Plaintiff in this proceeding, be forfeited in their entirety and judgment entered in favor of Plaintiff. In addition, if VPC breaches any term or condition of this Decree, or of such further order or decree as may be entered in this proceeding regarding the Seized Articles, then VPC shall, at its own expense, immediately return the Seized Articles to the United States Marshal for this District or otherwise dispose of them pursuant to an order of this Court. Following return of the Seized Articles to the United States, the Marshal shall destroy the Seized Articles and make due return to this Court regarding their disposition. In the event that destruction of the Seized Articles by the Marshal becomes necessary pursuant to this paragraph, VPC shall be responsible for all costs of storage and disposition that are incurred by the United States.

13. If VPC does not avail itself of the opportunity to repossess the Seized Articles in the manner stated, the United States Marshal for this District shall destroy the Seized Articles and make due return to this Court regarding their disposition. In the event that destruction of the articles by the Marshal becomes necessary pursuant to this paragraph, VPC shall be responsible for all costs of storage and disposition that are incurred by the United States.

**INJUNCTION**

14. Defendants, each and all of their officers, agents, employees, representatives, successors, assigns, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined from directly or indirectly doing or causing any of the following acts:

A. Compounding, manufacturing, processing, packing, holding, labeling, or distributing any article of drug, which is intended to be administered to, or is administered to, a food-producing animal, in a manner that causes the drug to be adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);

B. Compounding, manufacturing, processing, packing, holding, labeling, or distributing any article of drug, which is intended to be administered to, or is administered to, a

food-producing animal, in a manner that causes the drug to be adulterated within the meaning of 21 U.S.C. § 351(a)(5); and

C. Compounding, manufacturing, processing, packing, holding, labeling, or distributing any article of drug, which is intended to be administered to, or is administered to, a food-producing animal, in a manner that causes the drug to be misbranded within the meaning of 21 U.S.C. § 352(f)(1).

The provisions in paragraph 14 prohibit, among other things: (1) compounding, manufacturing, and/or processing from active ingredients in bulk form, including, but not limited to, iron and vitamins, unless the product that Defendants compound, manufacture, and/or process is (a) the subject of an approved new animal drug application ("NADA") filed pursuant to 21 U.S.C. § 360b, or (b) subject to an effective Notice of Claimed Investigational Exemption for a New Animal Drug filed pursuant to 21 U.S.C. § 360b(j) and Defendants comply with all applicable laws and regulations relating to the manufacture and distribution of investigational new animal drugs; and (2) compounding, manufacturing, and/or processing that fails to conform to the requirements set forth at 21 C.F.R. § 530.13. The provisions in this paragraph do not prohibit Defendants from using inactive ingredients (such as a coloring, emulsifier, excipient, flavoring, lubricant, preservative, or solvent) in compounding from approved animal and human drugs in conformity with 21 C.F.R. § 530.13. FDA shall have the discretion to determine whether an ingredient is active or inactive.

15. Nothing in this Decree modifies or relieves Defendants from any obligation to comply with the FD&C Act or any other federal or state statute or regulation. Nothing in this Decree shall affect the authority of the United States to bring an action against Defendants for a violation of the FD&C Act and/or applicable regulations.

16. Defendants, each and all of their officers, agents, employees, representatives, successors, assigns, and attorneys, and those persons in active concert or participation with any of them who receive actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined from directly or indirectly doing or causing the compounding,

manufacturing, processing, packing, labeling, or distributing of any article of drug that is intended to be administered to, or is administered to, a food-producing animal, unless and until:

A. Defendants select and retain an expert consultant who is qualified as set forth in paragraph 24 to inspect Defendants' facilities;

B. The expert consultant reviews all lists of inspectional observations (Form FDA 483) issued by FDA to Defendants since May 1, 1999;

C. The expert consultant inspects Defendants' facilities and operations to determine whether the Defendants are in compliance with 21 U.S.C. § 360b(a), 21 C.F.R. § 530.13, and this Decree;

D. The expert consultant prepares a detailed written report of his/her inspection, and submits the report concurrently to the President of VPC and to FDA;

E. Defendants correct all deficiencies noted by the expert consultant in his/her report; and

F. The expert consultant certifies in writing to FDA that Defendants' facilities and operations are in compliance with 21 U.S.C. § 360b(a), 21 C.F.R. § 530.13, and this Decree.

17.A. If, at any time after this Decree has been entered, FDA determines that Defendants, with respect to any drug that is intended to be administered to, or that is administered to, a food-producing animal, have not established, continuously maintained, and/or followed procedures, processes, and controls to ensure that Defendants:

i. Refrain from using any active ingredients in bulk form (including, but not limited to, iron and vitamins) in their compounding, manufacturing, and processing of products, unless the product that Defendants compound, manufacture, and/or process is (a) the subject of an approved NADA filed pursuant to 21 U.S.C. § 360b, or (b) subject to an effective Notice of Claimed Investigational Exemption for a New Animal Drug filed pursuant to 21 U.S.C. § 360b(j) and Defendants comply with all applicable laws and regulations relating to the manufacture and distribution of investigational new animal drugs;

ii. Compound products using only FDA-approved (hereafter, "approved") animal or human drugs, with inactive ingredients, and that they compound products for use in food-producing animals from human drugs only if approved animal drugs cannot be used;

iii. Compound each product only after a determination has been made, and has been documented by Defendants, for such product, that there is no approved animal drug or approved human drug that, when used as labeled or in conformity with criteria established in 21 C.F.R. Part 530, will, in the available approved dosage form and concentration, appropriately treat the condition diagnosed;

iv. Compound each product only on the lawful written or oral order of a licensed veterinarian;

v. Establish a master formula record for each product containing, at a minimum: the name of the product; specimen or copy of the labeling; a complete and accurate list of ingredients and quantities; description of container used; and compounding instructions, procedures, and specifications to be used for the product;

vi. Establish and implement procedures to continually monitor compounded drug products to ensure that master formula requirements described in subparagraph 17Av are being followed, including but not limited to, product strength and absence of pathogens, and, in the case of products labeled as sterile, the absence of endotoxins and pyrogens;

vii. Ensure that every product that Defendants label as sterile is, in fact, sterile, and is free of pyrogens and endotoxins;

viii. Assign an expiration date for each compounded product that does not exceed the prescribed period of treatment, or, for a product for which the commencement of treatment is unknown at the time of compounding because the product is being compounded in anticipation of future need, an expiration date that does not exceed the anticipated treatment period and that is based on professional judgment, appropriate testing, and/or published data;

ix. Establish and implement an adequate system for reconciling their inventory of articles used in compounding with their production yield of such articles;

x. Label products with all of the following: (a) name of the prescribing veterinarian; (b) all active ingredients; (c) the date dispensed and the expiration date; (d) any directions for use specified by the veterinarian, including the class/species or identification of the animals in which the product is intended to be used, and the dosage, frequency, route of administration, and duration of therapy; (e) any cautionary statements; (f) the name and address of the dispensing pharmacy; and, for food-producing animals, (g) withdrawal/discard time(s) for meat, milk, eggs, or any other food that might be derived from the treated animal(s); and

xi. Establish and implement a procedure for conducting product recalls, then FDA may, as and when it deems necessary, direct Defendants in writing to cease compounding, manufacturing, processing, packing, labeling, holding, and/or distributing drugs; recall products in accordance with procedures identified by FDA; and/or take any other corrective action(s) as FDA, in its discretion, deems necessary to bring Defendants and their products into compliance with the FD&C Act, applicable regulations, and this Decree.

B. If, at any time after this Decree has been entered, FDA determines that, with respect to any drug that is intended to be administered to, or that is administered to, a food-producing animal, Defendants have failed to comply fully with or have violated the FD&C Act, applicable regulations, or any provision of this Decree (other than by failing to establish, continuously maintain, and/or follow the procedures, processes, and controls listed in paragraph 17A), FDA may, as and when it deems necessary, direct Defendants in writing to recall products in accordance with procedures identified by FDA, and/or take any other corrective action(s) (other than ceasing operations) as FDA, in its discretion, deems necessary to bring Defendants and their products into compliance with the FD&C Act, applicable regulations, and this Decree.

C. Any directive issued pursuant to subparagraph 17A or B shall issue from the Minneapolis District Director, in consultation with the Center for Veterinary Medicine, and shall specify the violations giving rise to the directive and the time frames for correcting those violations.

D. Unless a different time frame is specified by FDA in a directive, within ten (10) business days after receiving a directive pursuant to subparagraph 17A or B, Defendants shall notify FDA in writing either that (1) Defendants are undertaking or have undertaken corrective action, in which event Defendants also shall describe the specific action taken or to be taken; or (2) Defendants do not agree with FDA's directive. If Defendants notify FDA that they do not agree with FDA's directive, Defendants shall explain in writing the basis for their disagreement; in so doing, Defendants also may propose specific alternative actions and specific time frames for achieving FDA's objectives.

E. If Defendants notify FDA that they do not agree with FDA's directive, FDA will review Defendants' notification and thereafter, in writing, affirm, modify, or withdraw its directive, as the Agency deems appropriate.

F. If FDA affirms or modifies its directive, Defendants shall, upon receipt of FDA's directive, immediately implement the directive (as modified, if applicable), and, if they so choose, bring the matter before this Court on an expedited basis. Defendants shall continue to diligently implement FDA's directive, unless the Court issues an order to the contrary.

G. In addition to the remedies provided in subparagraphs 17A-F, if, at any time after this Decree has been entered, FDA determines that Defendants have failed to comply fully with or have violated the FD&C Act, applicable regulations, or any provision of this Decree with respect to any drug that is intended to be administered to, or that is administered to, a food-producing animal, FDA may, as and when it deems necessary, move this Court for an Order directing Defendants to take any corrective action that FDA, in its discretion, deems necessary to bring Defendants and their products into compliance with the FD&C Act, applicable regulations, and this Decree, including, but not limited to, ceasing compounding, manufacturing, processing, packing, labeling, holding, and/or distributing drugs and recalling products. FDA may, in its discretion, give Defendants notice of the Agency's intent to seek such judicial relief before filing its motion, but such notice is not required. The authority vested in FDA under this paragraph is

separate from, and in addition to, the government's authority to seek to have this Court hold Defendants in civil or criminal contempt for violations of this Decree.

18. All FDA decisions rendered pursuant to this Decree shall be vested in the discretion of FDA, and shall be delivered in writing to Defendants with an explanation for the decision. Defendants shall abide by the decisions of FDA, which decisions shall be final, unless and until overturned, modified, or stayed by the Court after review as provided in this paragraph. Review by the Court of any FDA decision rendered pursuant to this Decree shall be made under the provisions of 5 U.S.C. §706(2)(A) and shall be based exclusively upon the written record that was before FDA at the time of the decision. No discovery shall be taken by either party.

19. Defendants shall reimburse FDA for the costs of all FDA inspections, examinations, analytical work, and review work that FDA deems necessary to evaluate Defendants' compliance with any part of this Decree at the standard rates prevailing at the time the activities are accomplished. As of the date that this Decree is signed by the parties, these rates are: $62.19 per hour and fraction thereof per representative for inspection and supervision (including record review) work, $74.53 per hour or fraction thereof per representative for analytical work, $0.345 per mile for travel expenses by automobile, government rate or the equivalent for travel by air, and the published government per diem rate or the equivalent for the areas in which the inspections are performed per day per representative for subsistence expenses, where necessary. In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.

20. If FDA determines that Defendants have remained in continuous compliance with this Decree, FD&C Act, and applicable regulations for a period of five years, Defendants shall no longer be liable for any costs associated with FDA inspections that are conducted thereafter.

21. Defendants shall, as and when FDA deems necessary to ensure compliance with this Decree and without prior notice, permit duly authorized FDA representatives to make inspections of Defendants' facilities, including all drugs and equipment therein, finished and

unfinished materials, containers, labeling, records {including, but not limited to, all computer hardware and software, computer printouts, raw data and laboratory data; and not including records that contain solely financial data or personnel data (other than data as to qualifications of technical and professional personnel performing functions subject to the FD&C Act)}, files, papers, standard operating procedures, and processes and controls; to take photographs; to collect samples of any drugs; and to copy any of the foregoing records. The costs of all such inspections, record reviews, and sample analyses shall be borne by Defendants at the rates specified above in paragraph 19. The inspections described in this Decree shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority described in this paragraph shall be separate and apart from, and in addition to, statutory authority to make inspections under the FD&C Act.

22.A. Within fifteen (15) days after the date of entry of this Decree, Defendants shall deliver copies of this Decree to each of their officers, directors, agents, employees, and representatives, and to all other persons who are in active concert or participation with any of them. Also, within ten (10) days after the date of entry of this Decree, Defendants shall prominently post a copy of this Decree in the employee common areas of their facilities. Defendants shall ensure that the Decree remains posted in the employee common areas for a period of no less than twelve (12) months. If any person begins employment with Defendants at a time subsequent to the periods described above, Defendants shall, within ten (10) days of the commencement of such employment, deliver a copy of this Decree to such person.

B. Within thirty (30) days after the date of entry of this Decree, Defendants shall provide to FDA an affidavit stating the fact and manner of their compliance with this paragraph, identifying the names and positions of all persons receiving copies of the Decree pursuant to the first sentence of subparagraph A. Thereafter, within ten (10) days of receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate compliance with this paragraph, Defendants shall provide such information or documentation to FDA.

23.A. Defendants shall notify FDA in writing at least fifteen (15) days before any of the following events, if the event may affect Defendants' obligations arising out of the Decree:

(1) reorganization, bankruptcy, dissolution, or assignment or sale resulting in the emergence of a successor;

(2) the creation or dissolution of subsidiaries; or

(3) any other change of the corporate structure or function of VPC.

B. Defendants shall serve a copy of this Decree on any prospective purchaser or assignee at least fifteen (15) days prior to such an assignment or change in ownership. Defendants shall furnish FDA with an affidavit of compliance with this paragraph sworn to by the Director of VPC no later than ten (10) days prior to such assignment or change in ownership.

24. All expert consultants required to be retained pursuant to this Decree shall be qualified by education, training, and experience to perform the functions for which they are retained. In addition, all such expert consultants shall be retained at Defendants' expense and shall be without personal or financial ties (other than consulting agreements between the parties) to Defendants or their officers, directors, or their immediate families.

25. All communications required to be sent to FDA under this Decree shall be prominently marked "Decree Correspondence" and shall be sent to the Director, Minneapolis District Office, Food and Drug Administration, 240 Hennepin Avenue, Minneapolis, MN 55401-1912.

26. If any Defendant violates this Decree and is found in civil or criminal contempt thereof, then Defendants shall, in addition to other remedies, reimburse the United States for its attorney's fees, investigational expenses, and court costs relating to the contempt proceedings.

27. This Court shall retain jurisdiction over this action and the parties hereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary and appropriate.

Dated this 28TH day of FEBRUARY, 2002 ____________________

UNITED STATES DISTRICT JUDGE

We hereby consent to the entry of the foregoing:

FOR DEFENDANTS:

William A. Soderlund, Jr., individually and on behalf of Veterinary Pharmacy Corporation

Michael Strobel, individually

James W. Brandt
Attorney Registration #10844
Brandt Law Office
219 W. Nassau, P.O. Box #57
St Peter, MN 56082
(507) 931-6940

Douglas B. Farquhar
Paul L. Ferrari
Hyman, Phelps, & McNamara, P.C.
700 Thirteenth Street, N.W.
Suite 1200
Washington, DC 20005
(202) 737-5600

Attorneys for William A. Soderlund, Jr., Michael Strobel, and Veterinary Pharmacy Corporation

FOR PLAINTIFF:

Robert D. McCallum, Jr.
Assistant Attorney General
Civil Division
U.S. Department of Justice

Thomas B. Heffelfinger
United States Attorney

(for)
Mary Jo Madigan
Assistant United States Attorney
Attorney Registration #214462
300 South 4th Street, Room 600
Minneapolis, MN 55415
(612) 664-5600

Sara Anjargolian
Trial Attorney
Office of Consumer Litigation
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
(202) 514-3764

Of Counsel:

Daniel E. Troy
Chief Counsel

Claudia J. Zuckerman
Associate Chief Counsel
5600 Fishers Lane, (GCF-1)
Rm. 5A-39
Rockville, MD 20857
(301) 827-7144